# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

URICK MILLER                                                                          PLAINTIFF

V.                                                                      NO. 1:12-CV-213-DMB-DAS

KIMES & STONE CONSTRUCTION CO., INC.                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This lawsuit is brought by Plaintiff Urick Miller against his former employer, Defendant Kimes & Stone Construction Company, Inc. ("Kimes & Stone"), alleging wrongful discharge based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Kimes & Stone has moved for summary judgment on grounds that Plaintiff did not suffer an adverse employment action because he quit his job, and that he was not replaced by or treated less favorably than an employee outside his protected group. Kimes & Stone also contends it would have been justified had it terminated Plaintiff because Plaintiff violated company policy by taking a company water truck home overnight. Plaintiff argues summary judgment should be denied because Kimes & Stone unofficially terminated him and, thereafter, hired three white men to work in positions he could have filled. For the reasons below, the Court finds that material fact issues exist warranting the denial of summary judgment.

## I

Plaintiff is an African-American man who was hired as a truck driver at Kimes & Stone on May 17, 2010. Emp. List [41-16] at 3. According to Plaintiff, his employment with Kimes & Stone was seasonal. Pl.'s Dep. [45-1] at 4. Plaintiff did not report to work during the "off season," which included winter months and times of inclement weather. *Id.* Throughout the rest of the year, Plaintiff returned to full time employment status.

During the week beginning July 17, 2011, Plaintiff worked as a crewmember on a project in Pearl, Mississippi, supervised by Brad Jones, a job foreman at Kimes & Stone. *Id.* at 6; Jones Dep. [45-4] at 6; Doc. [41-22]. Around that time, Plaintiff learned that his cousin passed away and the funeral would be held on Thursday, July 21, 2011, in Okolona, Mississippi. Pl.'s Dep. [45-1] at 6. Plaintiff asked Jones for permission to attend the funeral. *Id.* At the end of the workday on July 20, 2011, Jones told Plaintiff he could take off work to attend the funeral. *Id.*; Jones Dep. [45-4] at 6. Jones also advised Plaintiff that the crew would begin a new project in Tennessee the next day and to come to Tennessee after the funeral so he could work on the new project. Pl.'s Dep. [45-1] at 6; Jones Dep. [45-4] at 10-11. After talking with Jones, Plaintiff drove a company-owned water truck home and went to sleep. Pl.'s Dep. [45-1] at 6.

Kimes & Stone had a policy in place at the time which prohibited employees from taking company vehicles home. *See* Doc. [41-18] at 1 ("All water trucks, service trucks, dump trucks, etc. [i]f not left on the job are to be brought to the shop yard. No employees are to take company trucks home."). There is a dispute as to whether Jones gave Plaintiff permission to drive the water truck home or directed Plaintiff to return the truck to Kimes & Stone's shop in Booneville, Mississippi.

Early the next day, Jones discovered Plaintiff had not returned the truck to the shop, and that he would be short one truck for the Tennessee project without it. Jones Dep. [45-4] at 7-8. Jones contacted a supervisor, and two employees went to retrieve the truck from Plaintiff's home. *Id.* at 8; Pl.'s Dep. [45-1] at 6; S. Stone Dep. [41-8] at 13. Plaintiff claims he woke up when he heard the truck being moved, and tried to stop the employees from driving away. Pl.'s Dep. [41-1] at 6. Plaintiff also claims that he called Jones but did not get an answer, and contacted Richard Lindsey, Kimes & Stone's safety manager, who allegedly was unaware of the

2

incident and unable to provide information to Plaintiff. *Id.* at 6-7. Plaintiff never spoke with

Jones to confirm whether he had been fired, and he did not work on the project in Tennessee.[1]

As job foreman, Jones would call his crewmembers to tell them when and where to report

to work for each new project. Jones Dep. [45-4] at 13. Without notification from Jones,

crewmembers did not know whether to report to work or where new projects were located. For

the next two months, Plaintiff was not called in to work.

On an unspecified date, Plaintiff talked to Richard Lindsey and was advised that Jones

would be contacting him about a project in Alabama. Pl.'s Dep. [45-1] at 11. Jones eventually

called Plaintiff but told him he was not needed on the Alabama project. *Id.* at 11-12. Plaintiff

was not contacted by Jones again. *Id.* at 12; Jones Dep. [45-4] at 11.

On October 26, 2011, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC"), for wrongful discharge based on race.

Compl. [1] at Exh. A. On July 24, 2012, the EEOC issued Plaintiff a Notice of Right to Sue

letter. *Id.* at Exh. B. Plaintiff filed this lawsuit against Kimes & Stone on October 5, 2012, for

race discrimination under Title VII.[2] Defendant filed the instant motion for summary judgment

on October 2, 2013, arguing that Plaintiff cannot make a prima facie claim for Title VII

employment discrimination and, even if he could, violation of company policy is a legitimate,

nondiscriminatory reason for termination. In response, Plaintiff argues that he can make a valid

Title VII claim and summary judgment should be denied because material fact issues exist

---

[1] Plaintiff claims Nathan Vuncannon, one of his coworkers, told him that Jones said Plaintiff was "canned" or terminated. Pl.'s Dep. [45-1] at 6. However, Vuncannon testified during deposition that Jones never told him Plaintiff was terminated. Vuncannon Dep. [41-6] at 3.

[2] Plaintiff states in the complaint that his race discrimination claim arises under Title VII. Compl. [1] at 1. In response to the motion for summary judgment, Plaintiff states that his claim arises under Title VII and 42 U.S.C. § 1981. *See* Pl.'s Memo. Brief [44] at 12 ("Urick Miller claims he was discriminated against because of his race, black, in violation of 42 U.S.C. § 1981 and Title VII in being terminated."). Regardless of whether Plaintiff asserts his claims under Title VII or 42 U.S.C. § 1981, this Court has subject matter jurisdiction over the case based on a federal question. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 2000e-5(f)(3).

warranting the case to be heard by a jury.  The motion has been fully briefed and is ripe for decision.

## II

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted when the evidence shows there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law.  Entry of summary judgment is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When determining whether summary judgment is appropriate in a case, a district court reviews all well pleaded facts in the light most favorable to the nonmoving party. *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

### A

Plaintiff claims he was wrongfully terminated because he is an African-American.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir 1997) (quoting *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996)).

To survive a motion for summary judgment, a Title VII plaintiff without direct evidence of discrimination must show by a preponderance of the evidence that he: (1) belongs to a

protected group; (2) is qualified for the position he held; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected group or treated less favorably than employees outside the protected group. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973)); *Pratt*, 247 F.3d at 606. Once this showing is made, the burden shifts to the defendant-employer to rebut the presumption of discrimination "by articulating a legitimate, nondiscriminatory reason for its action." *Shackelford*, 190 F.3d at 404 (citations omitted). If the employer satisfies its burden, the plaintiff must then prove that the proffered reason is pretext for discrimination. *Id*.

Kimes & Stone concedes that Plaintiff is a member of a protected group and is qualified for his position as a truck driver. *See* Def.'s Memo. Brief [41] at 8 ("Kimes & Stone concedes, for purposes of summary judgment only, that Miller can satisfy factors (1) and (2) of the test for establishing a prima facie case … "). It challenges, however, whether Plaintiff can prove he suffered an adverse employment action and was replaced by or treated less favorably than an employee outside his protected group.[3] Kimes & Stone maintains that Plaintiff was not fired but quit his job by failing to report to work in Tennessee although he had been informed to drive there after his cousin's funeral. Plaintiff claims he did not have transportation to the job site, which is why he did not report to work in Tennessee. Plaintiff contends he was constructively

---

[3] Plaintiff also asserts that he has direct evidence of discrimination because Kimes & Stone's safety manager allegedly told him Kimes & Stone chose not to bring him back to work and hired white employees for racial reasons. See Pl.'s Memo. Brief [44] at 16 ("Finally, Richard Lindsey admitted that it became racial when Defendant would not bring Miller back to work at the Alabama work site, but instead, hired some white employees."). Kimes & Stone argues that Plaintiff's alleged direct evidence exceeds the scope of his EEOC claim and cannot be considered; the statement is untrue and was not made; and Plaintiff never revealed this statement in discovery. Because summary judgment can be denied based on circumstantial evidence, the Court will not consider any arguments related to Plaintiff's "direct evidence" of race discrimination.

discharged because he was never called back to work after the water truck was taken from his home on July 21, 2011.[4]

An employee who resigns from work may satisfy the adverse employment action element of a discrimination claim by proving constructive discharge. *Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 394 (5th Cir. 2002) (citing *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997). "To prove constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable person would feel compelled to resign." *Faruki*, 123 F.3d at 319. On constructive discharge, the Fifth Circuit notes:

> Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (citations omitted). *See Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000); *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001); *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008).

Based on the evidence in the record, viewed most favorably to Plaintiff, Plaintiff appears to have a valid constructive discharge claim because he suffered a "reduction in job responsibilities" when Kimes & Stone failed to call him back to work. Brad Jones, the job foreman to whom Plaintiff reported, admitted during his deposition that he did not call Plaintiff

---

[4] Based on Plaintiff's arguments in his response to the motion, he appears to assert a claim for constructive discharge. *See* Pl.'s Memo. Brief [44] at 14 ("Defendant claims that Miller was not fired and voluntarily quit …. Defendant is incorrect. After Defendant picked up the water truck, Miller tried repeatedly … to go back to work. … Jones also admitted that he never called Miller and told him when and where to be at the next job site. … Truth is, Miller called Defendant repeatedly to find out when he could come back to work.").

to come back to work after the water truck incident. Jones Dep. [45-4] at 11. Jones called

Plaintiff one time after the incident only to tell him he was not needed for a project in Alabama.

*Id.* at 13. Plaintiff was not called again regarding work, though he claims he continued to call

Kimes & Stone's employees asking whether he still had a job. Pl.'s Dep. [45-1] at 22. Though

Kimes & Stone submitted affidavits from Jones and other supervisory employees to support its

contention Plaintiff was not fired,[5] the fact remains Plaintiff was not given work orders after July

21, 2011. As such, any argument that Plaintiff resigned when he failed to report to work after

the funeral is undermined by Kimes & Stone's refusal to return his calls and/or answer his

requests for work.

Further, Plaintiff suffered a "reduction in pay" when he stopped receiving work

assignments.[6] For these reasons, the Court finds Plaintiff could reasonably show he was

constructively discharged and suffered an adverse employment action.

**B**

Kimes & Stone also argues that Plaintiff cannot show he was replaced by or treated less

favorably than employees outside his race. Plaintiff contends he can make the requisite showing

because Kimes & Stone replaced him with a white employee on the project in Tennessee and

hired three white employees after he was constructively discharged. In response, Kimes & Stone

argues that the employee who replaced Plaintiff on the Tennessee project had been working there

approximately ten years before Plaintiff was hired, and maintains that the employees hired after

Plaintiff resigned were not truck drivers. Plaintiff claims he could have filled whatever positions

for which the new employees were hired if no trucks would have been available for him to drive.

---

[5] *See* Jones Aff. [41-9]; G. Stone Aff. [41-10]; S. Stone Aff. [41-11]; E. Stone Aff. [41-12].

[6] *See* Pl.'s Dep. [45-1] at 11 ("You say I'm not fired, but you're not paying me no [sic] check every week. I'm not going out working with the rest of the crew.")

To satisfy the fourth prong of a Title VII employment discrimination claim, a plaintiff must demonstrate "either that he was replaced by someone outside the protected class or that other similarly situated employees outside the protected class were treated more favorably." *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)). In the present matter, it is unclear whether Plaintiff can show he was replaced by someone outside his protected group. Though Plaintiff argues he was replaced by a white employee on the Tennessee project,[7] that employee indisputably had been a member of Jones' crew and worked for Kimes & Stone over seventeen years before Plaintiff was hired. *See* Doc. [41-22]; Emp. List [41-16] at 2. As for the three white employees hired shortly after Plaintiff's alleged termination, two were hired as unskilled laborers and one as a mechanic. *See* Emp. List [41-16] at 2, 5; Doc. [41-17]. Plaintiff argues he could have filled either of those positions if no trucks were available for him to drive. Based on this assertion, it appears Plaintiff claims that, rather than returning his calls and/or contacting him about new work projects, Kimes & Stone hired three white employees to perform functions he could have performed. Even if Plaintiff could have worked as an unskilled laborer or mechanic, he was hired as a truck driver. Plaintiff could not be replaced by another employee in a position he never held.

Plaintiff alternatively argues that he can satisfy the fourth prong to his Title VII claim by showing he did not violate Kimes & Stone's policy on taking work vehicles home overnight. The Fifth Circuit has held that "[i]n work-rule violation cases … a Title VII plaintiff may establish a prima facie case by showing either [1] that he did not violate the rule, or [2] that, if he did, white employees who engaged in similar acts were not punished similarly." *Turner v.*

---

[7] Plaintiff already admitted that he did not have transportation to report to work on that project. *See* Pl.'s Dep. [45-1] at 12.

*Kansas City S. Ry. Co.*, 675 F.3d 887, 892-93 (5th Cir. 2012) (citations and internal quotations omitted). To establish disparate treatment, a plaintiff "must show that white employees were treated differently under circumstances 'nearly identical' to his." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Turner*, 675 F.3d at 893 (quoting *Lee v. Kan. City S. Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009)).

Plaintiff stated during his deposition that he took his work truck home overnight but he had permission to do so from Jones, and claims that other employees on the job site overheard Jones tell him to drive the water truck home. Pl.'s Dep. [45-1] at 6, 36. Kimes & Stone's safety director during the relevant time period stated at deposition that if an employee receives permission from a supervisor to take a company truck home, the policy is not violated. *See* Lindsey Dep. [45-3] at 9. For these reasons, Plaintiff argues he did not violate company policy.

In contrast, Kimes & Stone argues Plaintiff did not have permission to take the water truck home. Jones testified during his deposition that he told Plaintiff to leave the truck at the company shop. Jones Dep. [45-4] at 7. Kimes & Stone also submitted deposition testimony from other employees to support its contention that Plaintiff was supposed to take the truck to the company shop. *See* Def.'s Memo. Brief. [48] at 12 n.17; Warren Dep. [41-5]; Vuncannon Dep. [41-6].

In light of the conflicting testimony, it remains unclear whether Plaintiff had permission to take the work truck home and, as a result, was excused from Kimes & Stone's policy. If Jones

gave Plaintiff permission and Kimes & Stone was aware of that fact, Kimes & Stone could not have reasonably believed Plaintiff violated the policy. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) ("In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'") (quoting *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993) (plaintiff's "guilt or innocence of sexual harassment was largely irrelevant; [] the true issue was whether the [defendant] believed in good faith that [plaintiff] had committed the offensive behavior and … was discharged for that reason.")). Because there is a question regarding whether Kimes & Stone reasonably believed Plaintiff violated the policy, summary judgment should not be granted relative to the work-rule violation issue.

In addition, Plaintiff asserts that white employees who violated the same policy were not punished in the same manner as he was punished. Although Plaintiff advances this argument, he does not even attempt to show that these other employees "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Turner*, 675 F.3d at 893 (quoting *Lee,* 574 F.3d at 260). Because Plaintiff fails to make the requisite showing, any claim he asserts regarding similarly situated white employees who were not punished would fail. This lack of proof, however, is not detrimental to Plaintiff's claim since he still may be able to establish a prima facie claim by showing he did not violate the policy.

## C

Based on the above, it appears that Plaintiff makes a prima facie Title VII claim and raises a presumption of discrimination. The burden now shifts to Kimes & Stone to "articulate

some legitimate, nondiscriminatory reason for the employee's [termination]." *McDonnell Douglas,* 411 U.S. at 802. Kimes & Stone provides three reasons for Plaintiff's alleged termination: (1) violation of company policy; (2) insubordination or failure to follow Jones' instruction to take the water truck to the shop; and (3) failure to return to work and/or voluntary resignation. Kimes & Stone has satisfied its burden by providing a copy of the company policy as well as deposition testimony and sworn statements supporting its argument that Plaintiff failed to return to work. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (5th Cir. 2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (citation omitted). In light of this showing, the burden shifts back to Plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Plaintiff argues that Kimes & Stone's reasons for the alleged termination are untrue. Plaintiff contends he did not violate company policy because he had permission to take the truck home and, for that same reason, he was not insubordinate to Jones. As previously discussed, material fact issues exist regarding whether Plaintiff received permission from Jones; whether, if he had such permission, Plaintiff violated company policy; and whether Kimes & Stone reasonably believed he violated the policy. Further, the record reveals that Plaintiff may not have received notice of the policy prior to taking his work truck home in July 2011. *See* S. Stone Dep. [45-2] at 23; Lindsey Dep. [45-3] at 9. Plaintiff submits deposition testimony from Jones showing that he was unaware of the alleged policy prohibiting employees from taking company vehicles home. *See* Jones Dep. [45-4] at 14-15. Plaintiff also submits testimony from Kimes & Stone's former safety director acknowledging that no violation occurs if an employee gets a

supervisor's permission to take a company truck home. Lindsey Dep. [45-3] at 9. This evidence supports Plaintiff's arguments that he did not violate company policy and was not insubordinate to Jones. The evidence also has bearing on whether Kimes & Stone could have reasonably believed that Plaintiff violated the policy and/or was insubordinate to Jones.

Plaintiff also argues that the record shows he did not voluntarily resign from his job. It is undisputed that Plaintiff contacted employees of Kimes & Stone after the water truck incident to find out whether he could work on other projects. Plaintiff was initially told he might be able to work on a project in Alabama, but Jones called to inform him that he was not needed on that project. If Kimes & Stone believed then like it contends now that Plaintiff had resigned, it seems unlikely that it would consider him for other projects. Further, Plaintiff appears to have a valid claim for constructive discharge, which undermines any argument that Kimes & Stone reasonably believed he resigned voluntarily. As such, Plaintiff may be able to show pretext, making summary judgment inappropriate.

Plaintiff alternatively argues that if any of the proffered reasons are true, race was still a motivating factor in Kimes & Stone's decision to terminate him. Kimes & Stone contends that Plaintiff cannot make a "mixed motive" argument because he alleged in his EEOC charge and confirmed during deposition that race was the only reason he was terminated. The Court notes, however, that Plaintiff alleges in his complaint "[r]ace was a substantial motivating factor in [his] discharge." Compl. [1] at 3. Kimes & Stone also points out that Plaintiff answered "no" when asked at deposition if he was terminated because of his race. *See* Pl.'s Dep. [45-1] at 10. In the same deposition, however, Plaintiff later addressed why he believed race was a motivating factor in his termination. *Id.* at 10-11. Kimes & Stone's preclusion argument, thus, fails. Moreover, Plaintiff's subjective beliefs about why he was terminated are not relevant in

determining whether he makes a valid Title VII claim. The factors set forth in *McDonnell Douglas* guide this Court's analysis of whether Plaintiff can make a prima facie showing of employment discrimination. From the current record, Plaintiff appears to satisfy his burden.

## III

Based on the above, material fact issues exist in this case that should be resolved by a jury. Defendant's Motion for Summary Judgment is therefore DENIED.

SO ORDERED, this the 24th day of September 2014.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**